IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

G.L., an infant, by and through )
his next friend, et al., on )
their own behalf and on behalf )
of all others similarly )
situated, )
)
        Plaintiffs, )
)
v. ) No. 77-0242-CV-W-1
)
GARY STANGLER, et al., )
)
        Defendants. )

## JOINT MOTION TO MODIFY CONSENT DECREE AND MONITORING METHODOLOGY

Plaintiffs and Defendants, through counsel, jointly move for modification of the Amended Consent Decree, including Exhibit A thereof (hereinafter the Exit Plan) and the monitoring methodology, previously approved by this Court.

At their regular meeting on October 2 & 3, 2002 the parties reviewed and discussed the current status of the decree. As a result thereof the parties reached agreements as to modifications of several portions of the decree, including the exit plan, and the monitoring methodology. Pursuant to those agreements, the parties now submit this joint motion requesting that the Court approve modification of the Consent Decree, Exit Plan and the monitoring methodology as follows:

1

Case 4:77-cv-00242-DW   Document 288   Filed 07/30/03   Page 1 of 7

Consent Decree § II.E.3.b--d should be modified to establish a new schedule of worker/child visits to read: "b. During the first 8 weeks of a new placement a worker shall have 4 in-person visits a month with the child. A visit within 24 hours of placement as referenced in subparagraph a shall count as one of the four required visits during the first month. At least one visit per month must be in the foster home with the foster parent present. The Consent Decree compliance rate for visitation in the first 8 weeks will be set at 75%. c. After 8 weeks in the placement, staff must complete 2 in-person visits a month with the child. One visit per month must be in the foster home with the foster parent present. The compliance rate for these visits will be set at 90%. d. If one visit is not in the home each month, then visitation is not in compliance." Section II.E.4.b--d should be modified to read: "b. During the first 8 weeks of a new placement a worker shall have 4 in-person visits a month with the child. A visit within 24 hours of placement as referenced in subparagraph a shall count as one of the four required visits during the first month. At least one visit per month must be in the residential care setting with the residential care provider present. The Consent Decree compliance rate for visitation in the first 8 weeks will be set at 75%. c. After 8 weeks in the placement, staff must complete 2 in-person visits a month with the child. One visit per month must be in the residential care setting with the residential care provider present. The compliance rate for these visits will be set at 90%. d. If one visit is not in the residential care setting each month, then visitation is not in compliance." As a corollary to this proposed visitation schedule, the parties also request that the Exit Plan § 1.C be modified

2

Case 4:77-cv-00242-DW   Document 288   Filed 07/30/03   Page 2 of 7

to read as follows: "90% of the class members and their alternative care providers shall receive visits as required by Amended Modified Consent Decree § II.E.3 & 4 and Amended Revised Operational Guide § II.E.13-15."

The parties agreed that monitoring of the Exit Plan § I.D 1-3 should be transferred to the internal Quality Assurance Unit pursuant to § VI.G of the Amended Modified Consent Decree. However, no internal monitoring of sections would be required other than that which will be completed by the monthly PDR process described in § II.A of the Monitoring Methodology. The parties have also agreed that as part of the PDR process the Monitoring Committee shall review 10 more cases during each review period. Therefore, § II.A of the Monitoring Methodology should be amended to provide that the Monitoring Committee will review 35 cases during each review period.

After reviewing the Planning section (§ II.A of the Exit Plan) the parties agreed that defendants' procedures regarding written service agreements (WSA) should be changed so that its existing form CS-1 should be modified to include a heading that specifies it is a WSA. The parties also agreed that the most recent compliance report for January-June of 2002 should be adjusted to reflect this change, i.e. that any case that was out of compliance solely because of the WSA should be deemed in compliance and that the defendants would then need to maintain the adjusted figure. Therefore, the parties request that § II.A of the Exit Plan be modified to read: "84% of all class members reviewed through the Mix, Match and Fit Practice Development Review (PDR) in the manner set for in the Amended

3

Monitoring Methodology, attached hereto, for § II.A.1 shall receive a rating of 6 or 5 for plan development.

After reviewing § II.B (Service Provision) of the Exit Plan, the parties agreed that monitoring should continue through the PDR process described in the Amended Monitoring Methodology. However, the parties have agreed that it should be modified so that defendants will need to maintain their current level of compliance (85%). Therefore, the parties request that § II.B of the Exit Plan should be modified to read: "85% of all class members reviewed through the Plan Implementation Practice Development Review (PDR) in the manner set forth in the Amended Monitoring Methodology attached hereto, for § II.B.1, shall receive a rating of 6 or 5 for delivery of services, as defined in the Amended Monitoring Methodology." Consistent with their agreement that the Monitoring Committee review 10 additional cases for the PDR process each review period, the parties request that § II.B of the Monitoring Methodology be amended to provide that the Monitoring Committee will review 35 cases.

In reviewing compliance under §§ III.A & B of the Exit Plan, the parties noted a substantial difference between the ratings for medical services and those for dental services. The parties agreed that the monitoring of medical services under these sections should be transferred to the internal Quality Assurance Unit pursuant to § VI.G of the Amended Modified Consent Decree. Monitoring of dental services pursuant to §§ II.A & B of the Exit Plan would continue as currently being done with a combined rating being given for both

4

preventive and ongoing dental services. Therefore, § III.A of the Exit Plan should read: "90% of all class members reviewed through the Medical Practice Development Review (PDR), in the manner set for in the Amended Monitoring Methodology, shall receive a Preventive/Ongoing Dental Care rating of 6 or 5, as defined in the Amended Monitoring Methodology." Section III.B of the Exit Plan should be deleted. Section III of the Monitoring Methodology should be amended to read: "The DFS Quality Assurance Unit and the Monitoring Committee shall submit a joint analysis of their findings, reported separately in the DFS Quality Assurance Reports and the Monitoring Committee Reports for each six (6) month reporting period. For each six month reporting period, the DFS Quality Assurance Unit will review the status of preventive and ongoing dental intervention and assign ratings for 50 randomly selected class members and the Monitoring Committee will review the status of preventive and ongoing dental intervention and assign ratings for 35 randomly selected class members (a minimum of 10 will be selected for review each month). The review of class members' preventive and ongoing dental intervention will be conducted pursuant to the Health/Physical Well-Being Practice Development Review (PDR) protocol (Schedule C, attached). To obtain the information required by Schedule C, the reviewer shall (1) review the class member's dental records, and (2) interview the class member's alternative care provider, medical case manager, social worker, and, if appropriate, the class member. The reviewer will make aggressive efforts to interview the child's guardian ad litem and dentist or some representative of the dentist. The reviewer will leave a detailed message concerning

5

the nature of the inquiry and, where and when the reviewer may be reached. If the reviewer is unable to interview the class member's dentist, or some representative thereof, the reviewer must rely upon the information in the class member's DFS dental records. The reviewer may also interview others with pertinent information, as the reviewer determines necessary. Based upon the information obtained, the Quality Assurance Unit and the Monitoring Committee will assign a rating to the class member's dental care status, in accordance with the standards articulated in Schedule C."

The parties agreed that monitoring of §§ IV.A-F of the Exit Plan should be transferred to the internal Quality Assurance Unit pursuant to § VI.G of the Amended Modified Consent Decree. In their place there would be two new sections setting new standards regarding length of time to adoption. As a result, the parties request that § IV of the Exit Plan be modified to read: "A. The median length of time from entry into care until placement in temporary or final adoptive custody shall be no more than 24 months. B. The median length of time from assigning a goal of adoption until placement in temporary or final adoptive custody shall be no more than 12 months."

Wherefore, the parties jointly move that the Consent Decree, including Exit Plan, and monitoring methodology be modified as set forth above. It is the intention of the parties that these changes be effective with the monitoring report covering the period of July--December 2002. However, because of a misunderstanding between the parties about whether 24-hour visits were still required, the parties have agreed that the reports for July--December 2002

6

and January--June 2003 shall not count a failure to make a 24-hour visit as out of compliance. DFS agrees to train staff regarding the 24-hour visit requirement and the parties agree that this requirement will be part of the monitoring process beginning with the report for July--December 2003.

Respectfully submitted,

JEREMIAH W. (JAY) NIXON
Attorney General

*[signature: Lambiase by LBB]*

SUSAN LAMBIASE
CHILDRENS RIGHTS INC.
404 Park Ave., 11th floor
New York, NY 10016
(212) 683-2210
(212) 683-4015 (Fax)

*[signature: Lori Burns-Bucklew]*
LORI BURNS-BUCKLEW
Missouri Bar No. 32053

SHOOK, HARDY & BACON
1 Kansas City Place
1200 Main Street
Kansas City, MO 64105-2118
(816) 474-6550
(816) 474-4066 (Fax)

Attorneys for Plaintiffs

*[signature: Robert Presson]*

ROBERT PRESSON
Assistant Attorney General
Missouri Bar No., 23256

Broadway State Office Building
221 West High Street
P. O. Box 899
Jefferson City, MO 65102-0899
(573) 751-8784
(573) 751-9456 (Fax)

Attorneys for Defendants